DUNHAM et al. v. FITCH et al.

(Supreme Court, Appellate Division, Third Department. March 7, 1900.)

1. INSANE PERSONS—CAPACITY TO BE SUED.
    Where a committee of an insane person has obtained and holds a fund, in his representative capacity, not belonging to his ward's estate, an action to determine the ownership thereof is maintainable against him in the same capacity.

2. SAME—LEAVE TO SUE.
    That no leave to sue a committee of an insane person in his representative capacity was obtained is not ground for sustaining a judgment dismissing the action, where the objection was not raised at the trial.

Appeal from judgment on report of referee.

Action by Emily Dunham and another against Francis E. Fitch, as committee of the person and estate of Charles T. Fitch, an incompetent person, and another. From a judgment entered upon a referee's report dismissing the complaint, plaintiffs appeal. Reversed.

On or about the 5th August, 1865, the Connecticut Mutual Life Insurance Company issued its policy of insurance, in the sum of $5,000, upon the life of John F. Gillette, of South Creek, Pa., payable at the death of Gillette to his wife, Phebe C. Gillette. In case, however, of the death of the wife before the husband, the amount was payable to her children. The premiums were to be all paid within 10 years, and were so paid by John F. Gillette. The policy was payable at the city of Hartford, Conn. Phebe C. Gillette died in September, 1893, leaving, her surviving, three children,—the two plaintiffs and the defendant Sarah J. Fitch. John F. Gillette died June 7, 1895. On July 12, 1873, John F. Gillette executed and delivered to Charles T. Fitch his note for $1,565.37, payable in one year after date, with interest. This note contained a confession of judgment, and upon this a judgment was entered in the court of common pleas of Bradford county, Pa., on the 18th August, 1876, for the sum of $1,566.62, in favor of Fitch against Gillette. On the 28th August, 1876, Gillette and his wife and the three children executed and delivered to Charles T. Fitch an assignment of all their right, title, and interest in the said policy of insurance. This assignment was indorsed upon the policy, and was absolute in terms. It was made, as the referee finds, and accepted, for the purpose of securing the payment of the indebtedness represented by the judgment, and for no other purpose; and in consideration of such assignment Charles T. Fitch satisfied of record the judgment on the 4th September, 1876, and held the assignment in the place and stead of the security afforded by the judgment. Charles T. Fitch resided in Yates county, in this state; and on the 19th July, 1877, he was duly declared a lunatic by the county court of that county, and Francis E. Fitch was duly appointed committee of his person and estate, and has since been acting as such committee. As such he took possession of the policy and assignment, and retained them until the payment to him of the amount thereof. After the death of John F. Gillette, and on the 23d May, 1896, Francis E. Fitch, as committee, brought an action in the supreme court against the insurance company to recover the amount of the policy. The company put in an answer, the case came to trial, and judgment was ordered for the full amount, and entered on the 7th December, 1896. On December 11, 1896, the company paid the full amount of the judgment to the plaintiff therein, or his attorney, and the policy and assignment were surrendered to the company. The present action was commenced on the 19th March, 1897. In the complaint it was alleged, among other things, that at the time of the execution by plaintiffs, and delivery, of the assignment, each of the plaintiffs was a married woman residing with her husband, and that under the laws of the state of Pennsylvania, where they resided and the assignment was executed, a married woman had no power to assign or dispose of her personal property or choses in

action; that the husbands of the plaintiffs did not join in the assignment, or consent thereto, and that as to the plaintiffs the assignment was void; that the insurance company had paid the full amount of the policy to the committee, and he had duly delivered up and surrendered the policy, with the assignment thereon. It was also alleged that the debt as security for which the assignment was given had been fully paid by John F. Gillette. A demand upon the committee for an accounting was also alleged, and a refusal by him to account. In his answer the committee alleged, among other things, that the assignment was given to secure to Charles T. Fitch the payment to him of whatever sums John F. Gillette then owed or might thereafter owe to him; that the defendant, as committee, had regularly settled with John F. Gillette, and there was due and owing from Gillette to the defendant, as such committee, on the 4th May, 1894, the sum of $3,369.84. A willingness to settle with the plaintiffs was also alleged. The referee found that at the time of the execution and delivery of the assignment the plaintiff Dunham resided with her husband in the state of Pennsylvania, and that under the laws of that state she had no power, without the consent of her husband, to make the assignment, and that her husband did not consent; that the indebtedness the assignment was given to secure (being the debt represented by the judgment) amounted on December 11, 1896, to the sum of $3,309.45, being the sum of $10.27 in excess of the shares of the plaintiff Pettingill and the defendant Sarah J. Fitch in the insurance moneys. As matter of law, he decided that the assignment by the plaintiff Dunham was void, and that she is still the owner of and entitled to one-third interest in the policy or the proceeds thereof; that Francis E. Fitch, as committee, is not liable for the share of the plaintiff Dunham in such proceeds, but is only liable individually, if at all; that neither of the plaintiffs has made out a cause of action against either of the defendants, and the complaint should be dismissed. Judgment was accordingly directed.

Argued before PARKER, P. J., and HERRICK, MERWIN, and KELLOGG, JJ

Dix W. Smith (E. J. Baldwin, of counsel), for appellants.
Gabriel L. Smith, for respondents.

MERWIN, J. The main question in this case is whether the referee correctly held that there could be no recovery in this action against Francis E. Fitch, as committee, for the one-third which, as the referee held, belonged to the plaintiff Dunham. The argument on the part of the respondents seems to be that, if the assignment by Mrs. Dunham was invalid, then the committee had no right to collect her share, and therefore is not liable for her share, although he did in fact collect the whole, as committee, under a judgment against the insurance company awarding him, as committee, the full amount. The subject of the action is the fund collected by the committee, as such, by virtue of an assignment of the policy executed by all the parties in interest, including the plaintiffs, to Charles T. Fitch, before the appointment of the committee. The plaintiffs, in their complaint, assert their right to obtain two-thirds of the fund, upon two theories,—one, that the assignment, so far as they were concerned, was invalid under the laws of Pennsylvania, the husbands not having consented to it; the other, that the debt for the payment of which the assignment was made as security had been fully paid. The defendant Sarah J. Fitch was the owner of the other one-third interest, and was a proper, if not necessary, party to a final disposition of the controversy. She, however, upheld the committee in his claim to the fund, to the extent of the entire debt

against Gillette. It appears that the committee, in his efforts, aft-
er the collection of the money, to settle with the plaintiffs claimed
to act officially as to the fund, and that the amount of the debt due
to him as committee, and for which he claimed payment out of the
fund, exceeded two-thirds of the fund. It appears or may be. in-
ferred that the plaintiffs acquiesced in the right of the committee
to receive the whole fund from the company. The plaintiffs soon
after the death of Mr. Gillette notified the company not to pay the
policy, or any part thereof, to the committee. In their notice to
the company no claim was made that the assignment of either plain-
tiff was invalid. Nor, so far as it appears, was there any such claim
made until after this suit was commenced, or any notice to the com-
mittee of such claim. The action is not for a wrongful taking. It
is to determine the ownership of a fund in the committee's hands,
and some portion of which in fact belongs to the estate he repre-
sents. In the complaint it is assumed that the insurance company
had a right to pay the whole to the committee. It is alleged that
upon the payment the committee "duly delivered up and surren-
dered" the policy and assignment. So that, if the plaintiffs, or ei-
ther of them, had the right to consider the act of collecting as a
conversion, they have not done so. They, in effect, assume that the
money has been properly collected by the committee, and, if so, it
is lawfully in his hands. The committee, as such, claimed the pos-
session of the whole, and alleged a willingness to account as such.
The committee in collecting the policy was acting in the line of his
duty, and he was acting for the benefit of the estate in asserting his
claim to hold the fund to the extent of the entire debt owing from
Gillette. It was important for the estate that the extent of its
right should be determined. The committee had a valid assign-
ment of two-thirds of the fund, and claimed that the assignment
was valid as to the whole. He had a right, as committee, to bring
the action against the company. Code, § 2340. Having obtained
the fund as committee, no good reason is apparent why an action
to determine the ownership of the fund should not be maintainable
against him in the same character. In De Valengin's Adm'rs v.
Duffy, 14 Pet. 282, 10 L. Ed. 457, it was held that when an executor
or administrator, in his representative character, lawfully received
money or property in fact not belonging to the estate, he may be
compelled to respond in the same character to the true owner.
See, also, Wall v. Kellogg's Ex'rs, 16 N. Y. 385; 11 Am. & Eng.
Enc. Law (2d Ed.) 943. No good reason is apparent why this prin-
ciple should not be applied to the case in hand.

But it is said that the action was brought without leave of the
court. That does not appear. No question on that subject is
raised by the answers of the defendants, or was raised at the trial.
If no such leave was in fact given, and the question had been raised
at the trial, it would have been competent for the court, on proper
application, to have granted leave nunc pro tunc. McKernan v.
Robinson, 84 N. Y. 105. It was not a part of the cause of action.
The defendants are not, I think, in a position to justify the dis-
missal of the complaint upon this ground. We must assume that

the committee is properly in court. Hackley v. Draper, 4 Thomp.
& C. 614, 631.

. The committee having, as such, received the fund, and still hold-
ing it in that capacity,. the action was, I think, maintainable against
him in the same capacity, and the referee erred in holding to the
contrary. A reversal as to the plaintiff Dunham must follow. As
such reversal would open the question of the validity of the assign-
ment by her, the proper disposition of that question and of the case
in the contingency of the assignment being found to be valid would
call for a new trial as to all the parties.

Judgment reversed, referee discharged, and new trial granted;
costs to abide the event. All concur.